Donald Roy **WILKINS**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 3–90–334–CR.

Court of Appeals of Texas, Austin.

Feb. 26, 1992.

Bruce S. Fox, Austin, for appellant.

Ken Oden, County Atty., Giselle Horton, Asst. County Atty., Travis County, Austin, for appellee.

Before CARROLL, C.J., and KIDD and DAVIS,* JJ.

DAVIS, Justice (Retired).

Appeal is taken from a conviction for public lewdness. *See* Tex.Penal Code Ann. § 21.07 (1989). Trial was before the court upon a plea of not guilty. Punishment was assessed at one year, probated, and a fine of two hundred fifty dollars.

In a single point of error, appellant asserts the court erred in denying his motion to suppress [1] "because the evidence was discovered and seized in violation of both Texas and United States law."

Officer Steve Blackmore, a member of the vice division of the Austin Police Department, was the sole witness at the hearing on the motion to suppress. Blackmore testified that on December 28, 1989, he was in the Pleasureland Bookstore at 29th and Guadalupe in Austin to determine if this business was being operated in accordance with a city ordinance regulating adult arcades. Blackmore related that the store contained several booths where pornographic videos are shown. Prior to entering a booth, a patron deposits a coin in a slot that activates an "in use" light over the booth. The purpose of the light is "to advise someone outside the booth that the particular booth is in use."

---

* Before Tom G. Davis, Judge (retired), Court of Criminal Appeals, sitting by assignment. *See* Tex.Gov't Code Ann. § 74.003(b) (1988).

1. The court's action in denying the motion to suppress is recited in a stipulation of evidence entered into by the parties, signed by counsel and the court. The stipulation, appearing in a supplemental transcript, constituted the evidence at trial following the motion to suppress.

Blackmore approached a booth where an unidentified person had pulled the curtain open "four or five inches" and asked the individual to move. The "in use" light was "most likely" operating on this booth. Upon the person releasing the curtain following Blackmore's request that he move, the curtain closed. Blackmore was able to discern two "not very loud" voices emitting moaning sounds distinguishable from the audio portion of the video playing in the booth. Blackmore pulled the curtain aside and observed appellant and another male with "their trousers undone, their genitals exposed, and [they] were fondling each other with their hand or hands." Prior to pulling the curtain aside, Blackmore stated that he was unable to see inside the booth.

Appellant asserts that he had a reasonable expectation of privacy which was invaded, and which entitled him to the protection of the Fourth Amendment to the United States Constitution.

▮ Absent a reasonable expectation of privacy, appellant is not entitled to the protection of the Fourth Amendment. The resolution of the question whether appellant had a reasonable expectation of privacy depends on the determination of two issues, the first being whether appellant by his conduct has exhibited an actual or subjective expectation of privacy. The second prong requires a determination whether appellant's expectations, viewed objectively, were justifiable under the circumstances. The second question requires an inquiry into whether appellant's expectations of privacy were such that society is prepared to recognize them as reasonable. *Liebman v. State*, 652 S.W.2d 942, 945–46 (Tex.Crim. App.1983).

It is undisputed that the Pleasureland Bookstore is a public place. What people seek to preserve as private, even in areas accessible to the public, may be constitutionally protected, as the Fourth Amendment protects people, not places. *Katz v. United States*, 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967); *Buchanan v. State*, 471 S.W.2d 401, 404 (Tex.Crim. App.1971).

In *Liebman*, the conviction for public lewdness was based on the conduct officers observed when they stood on each other's cupped hands and took turns in looking over a seven-foot enclosure into one of the booths in an adult arcade. *Liebman*, 652 S.W.2d at 946. The entry to the booth was closed. The court held that the persons in the booth had a subjective expectation of privacy while in the booth, such expectation was reasonable, and the officers' conduct in boosting one another to look over the walls of the booth constituted a search.

In *Green v. State*, 566 S.W.2d 578, 582–83 (Tex.Crim.App.1978), the court discussed when a search is not subject to Fourth Amendment protection. The court stated:

> What a person knowingly exposes to the public, even in his own home or office, is not subject to Fourth Amendment protection. (Citation omitted). A search means, of necessity, a quest for, a looking for, or a seeking out of that which offends against the law. This implies a prying into hidden places for that which is concealed. It is simply not a search to observe that which is open to view. (Citation omitted).

In *Buchanan*, appeals were taken from two convictions of sodomy. The court held that the defendant's right of privacy was violated when officers observed from concealed positions above the rest room in a department store acts of oral sodomy by defendant while inside the toilet stall. The court stated while the rest room was public, it is private to the extent it is offered to the public "for private, however transient, individual use." *Buchanan*, 471 S.W.2d at 404. The court concluded that a person inside a stall with the door locked had a reasonable expectation of privacy. On the other hand, the court found that the defendant had no reasonable expectation of privacy where the sodomy offense occurred in a restroom in a public park where the commode stalls had no doors and the occupants were visible to the public.

In *Gillett v. State*, 588 S.W.2d 361, 362–63 (Tex.Crim.App.1979), the defendant entered a department store fitting room, tried on a sweater, rolled it up, placed it in her

purse, left the fitting room, and passed through several departments of the store before she was stopped by a female security officer. Prior to stopping the defendant, the security guard observed the actions of the defendant in the fitting room by getting down on her knees and looking into the stall occupied by the defendant. The fitting room had a sign posted on the mirror which read: "these fitting rooms are under surveillance by female security." At the outset, the court noted that there had been no Fourth Amendment violation since the exclusionary rule applies only to governmental action. The court further stated that no one could expect privacy in light of the posted sign on the mirror. The fitting room was for use by the public on conditions established by the business and if the defendant did not want to accept the posted conditions, she was not compelled to do so. *Id.* at 363.

In *Green,* a three-to-five-inch gap between the curtain and the edge of the viewing booth in the adult arcade enabled the officers to view the defendant's deviate sexual conduct. A gap between the curtain and the edge of the viewing booth was described as being common to booths in the arcade. In addition, the red light on the top of the booth was not on so as to reflect that the booth was occupied by the defendant. The court found that the defendant, under the facts of the case, waived any expectation of privacy. 566 S.W.2d at 583.

■ In the instant cause, the curtain was closed so as to obscure vision from outside the booth. The officer related that the "in use" light was "most likely operating." The State suggests that the officer's observation that other patrons had drawn curtains and peered into the viewing booths negates any expectation of privacy. Except for the incident preceding the officer's action in drawing the curtain, there is no showing that appellant may have been aware of any practice of patrons peering into the booths. We find Blackmore's testimony relative to the design of the booth which enabled appellant to enter the booth with the curtain closed and the "in use" light activated reflected a subjective expectation of privacy on the part of the appellant.

■ The second question requires a determination whether appellant's subjective expectations of privacy were such that society is prepared to recognize them as "reasonable," or, stated another way, whether appellant's expectations, viewed objectively, were justifiable under the circumstances. *Liebman,* 652 S.W.2d at 946. The State directs our attention to the court's language in *Liebman* that the collective consciousness in the arcade was that no one but law enforcement officers would look over the booth tops. We believe that the collective thinking in the arcade in the instant cause was that the curtains which obscured vision from outside the booth and that the "in use" lights were intended to preserve the privacy expectations of the patrons. We find the scenarios in *Buchanan* to be relevant in determining whether a person's expectation of privacy is justifiable under the circumstances of the instant cause. We believe that the appellant's presence in a booth with a curtain which excluded outside viewers and a light which reflected that the booth was "in use" entitled the appellant to as great an expectation of privacy as the person who occupied the toilet stall with the door closed. We conclude that appellant's subjective expectations of privacy while in the booth, viewed objectively, were justifiable and those society would be prepared to recognize as reasonable.

We must now determine whether the officer had probable cause to conduct a warrantless search of the booth. It must be borne in mind that an essential element of a violation under § 21.07 is that the various proscribed acts of sexual conduct must occur in a public place.

In *Liebman,* 652 S.W.2d at 948–49, the court observed:

There is no question that law enforcement agencies have legitimate interests in deterring and punishing sexual conduct committed in a manner which would offend the average citizen who might inadvertently confront it; *viz:* in a public place where no one has or is able to

exclude others, or in a nonpublic place where an unwitting citizen happens upon the activity due to the actors' reckless disregard for that possibility. Section 21.07(a), supra. But the need for law enforcement agents affirmatively to seek out this conduct under circumstances which do not threaten inadvertent discovery, and thereby knowingly and voluntarily subject themselves to the alarm and offense the statute seeks to contain, seems minimal if not nonexistent. [citation omitted].

Viewed in this context, the conduct of the officers is revealed to be nothing more than a determined and calculated invasion of privacy which has little relationship to protecting the average law abiding citizen or to advancing the intent of the criminal prohibition involved.

■ Probable cause for a warrantless search and arrest exists when at that moment the facts and circumstances within the officer's knowledge and of which he had reasonably trustworthy information are sufficient to warrant a prudent person in believing that the arrested person has committed or is committing an offense. *Britton v. State,* 578 S.W.2d 685, 686 (Tex. Crim.App.1979).

■ The officer had a right to be in the hallway outside the booth, an area which is a public place. While standing in the hallway, he heard two "not very loud voices" making moaning sounds. The State contends that in the context of the setting, the officer's auditory senses furnished him with reason to believe that a crime was being committed. We believe the noises the officer heard would be as consistent with innocent activity as criminal conduct. It is just as reasonable to assume the sounds were in response to a pornographic video as it would be to associate them with criminal activity. We conclude that the information possessed by the officer fails to rise to the level of probable cause to justify the search and arrest of the appellant. We conclude that the trial court erred in denying appellant's motion to suppress.

The judgment is reversed and the cause remanded.