IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-90-334-CR





DONALD ROY WILKINS,



 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE



 




FROM THE COUNTY COURT AT LAW NO. 6 OF TRAVIS COUNTY,



NO. 340,565, HONORABLE WILFORD FLOWERS, JUDGE PRESIDING



 





 Appeal is taken from a conviction for public lewdness. See Tex. Penal Code Ann.
§ 21.07 (1989). Trial was before the court upon a plea of not guilty. Punishment was assessed
at one year, probated, and a fine of two hundred fifty dollars.

 In a single point of error, appellant asserts the court erred in denying his motion
to suppress (1) "because the evidence was discovered and seized in violation of both Texas and
United States law."

 Officer Steve Blackmore, a member of the vice division of the Austin Police
Department, was the sole witness at the hearing on the motion to suppress. Blackmore testified
that on December 28, 1989, he was in the Pleasureland Bookstore at 29th and Guadalupe in
Austin to determine if this business was being operated in accordance with a city ordinance
regulating adult arcades. Blackmore related that the store contained several booths where
pornographic videos are shown. Prior to entering a booth, a patron deposits a coin in a slot that
activates an "in use" light over the booth. The purpose of the light is "to advise someone outside
the booth that the particular booth is in use."

 Blackmore approached a booth where an unidentified person had pulled the curtain
open "four or five inches" and asked the individual to move. The "in use" light was "most likely"
operating on this booth. Upon the person releasing the curtain following Blackmore's request that
he move, the curtain closed. Blackmore was able to discern two "not very loud" voices emitting
moaning sounds distinguishable from the audio portion of the video playing in the booth. 
Blackmore pulled the curtain aside and observed appellant and another male with "their trousers
undone, their genitals exposed, and [they] were fondling each other with their hand or hands." 
Prior to pulling the curtain aside, Blackmore stated that he was unable to see inside the booth.

 Appellant asserts that he had a reasonable expectation of privacy which was
invaded, and which entitled him to the protection of the Fourth Amendment to the United States
Constitution.

 Absent a reasonable expectation of privacy, appellant is not entitled to the
protection of the Fourth Amendment. The resolution of the question whether appellant had a
reasonable expectation of privacy depends on the determination of two issues, the first being
whether appellant by his conduct has exhibited an actual or subjective expectation of privacy. The
second prong requires a determination whether appellant's expectations, viewed objectively, were
justifiable under the circumstances. The second question requires an inquiry into whether
appellant's expectations of privacy were such that society is prepared to recognize them as
reasonable. Liebman v. State, 652 S.W.2d 942, 945-46 (Tex. Crim. App. 1983).

 It is undisputed that the Pleasureland Bookstore is a public place. What people seek
to preserve as private, even in areas accessible to the public, may be constitutionally protected,
as the Fourth Amendment protects people, not places. Katz v. United States, 389 U.S. 347, 351
(1967); Buchanan v. State, 471 S.W.2d 401, 404 (Tex. Crim. App. 1971).

 In Liebman, the conviction for public lewdness was based on the conduct officers
observed when they stood on each other's cupped hands and took turns in looking over a seven-foot enclosure into one of the booths in an adult arcade. Liebman, 682 S.W.2d at 941. The entry
to the booth was closed. The court held that the persons in the booth had a subjective expectation
of privacy while in the booth, such expectation was reasonable, and the officers' conduct in
boosting one another to look over the walls of the booth constituted a search.

 In Green V. State, 566 S.W.2d 578, 582-83 (Tex. Crim. App. 1978), the court
discussed when a search is not subject to Fourth Amendment protection. The court stated:



What a person knowingly exposes to the public, even in his own home or office,
is not subject to Fourth Amendment protection. (Citation omitted). A search
means, of necessity, a quest for, a looking for, or a seeking out of that which
offends against the law. This implies a prying into hidden places for that which
is concealed. It is simply not a search to observe that which is open to view. 
(Citation omitted).



 In Buchanan, appeals were taken from two convictions of sodomy. The court held
that the defendant's right of privacy was violated when officers observed from concealed positions
above the rest room in a department store acts of oral sodomy by defendant while inside the toilet
stall. The court stated while the rest room was public, it is private to the extent it is offered to
the public "for private, however transient, individual use." Buchanan, 471 S.W.2d at 404. The
court concluded that a person inside a stall with the door locked had a reasonable expectation of
privacy. On the other hand, the court found that the defendant had no reasonable expectation of
privacy where the sodomy offense occurred in a restroom in a public park where the commode
stalls had no doors and the occupants were visible to the public.

 In Gillett v. State, 588 S.W.2d 361, 362-63 (Tex. Crim. App. 1979), the defendant
entered a department store fitting room, tried on a sweater, rolled it up, placed it in her purse, left
the fitting room, and passed through several departments of the store before she was stopped by
a female security officer. Prior to stopping the defendant, the security guard observed the actions
of the defendant in the fitting room by getting down on her knees and looking into the stall
occupied by the defendant. The fitting room had a sign posted on the mirror which read: "these
fitting rooms are under surveillance by female security." At the outset, the court noted that there
had been no Fourth Amendment violation since the exclusionary rule applies only to governmental
action. The court further stated that no one could expect privacy in light of the posted sign on the
mirror. The fitting room was for use by the public on conditions established by the business and
if the defendant did not want to accept the posted conditions, she was not compelled to do so. Id.
at 363.

 In Green, a three-to-five-inch gap between the curtain and the edge of the viewing
booth in the adult arcade enabled the officers to view the defendant's deviate sexual conduct. A
gap between the curtain and the edge of the viewing booth was described as being common to
booths in the arcade. In addition, the red light on the top of the booth was not on so as to reflect
that the booth was occupied by the defendant. The court found that the defendant, under the facts
of the case, waived any expectation of privacy. 566 S.W.2d at 583.

 In the instant cause, the curtain was closed so as to obscure vision from outside the
booth. The officer related that the "in use" light was "most likely operating." The State suggests
that the officer's observation that other patrons had drawn curtains and peered into the viewing
booths negates any expectation of privacy. Except for the incident preceding the officer's action
in drawing the curtain, there is no showing that appellant may have been aware of any practice
of patrons peering into the booths. We find Blackmore's testimony relative to the design of the
booth which enabled appellant to enter the booth with the curtain closed and the "in use" light
activated reflected a subjective expectation of privacy on the part of the appellant.

 The second question requires a determination whether appellant's subjective
expectations of privacy were such that society is prepared to recognize them as "reasonable," or,
stated another way, whether appellant's expectations, viewed objectively, were justifiable under
the circumstances. Liebman 682 S.W.2d at 946. The State directs our attention to the court's
language in Liebman that the collective consciousness in the arcade was that no one but law
enforcement officers would look over the booth tops. We believe that the collective thinking in
the arcade in the instant cause was that the curtains which obscured vision from outside the booth
and that the "in use" lights were intended to preserve the privacy expectations of the patrons. We
find the scenarios in Buchanan to be relevant in determining whether a person's expectation of
privacy is justifiable under the circumstances of the instant cause. We believe that the appellant's
presence in a booth with a curtain which excluded outside viewers and a light which reflected that
the booth was "in use" entitled the appellant to as great an expectation of privacy as the person
who occupied the toilet stall with the door closed. We conclude that appellant's subjective
expectations of privacy while in the booth, viewed objectively, were justifiable and those society
would be prepared to recognize as reasonable.

 We must now determine whether the officer had probable cause to conduct a
warrantless search of the booth. It must be borne in mind that an essential element of a violation
under § 21.07 is that the various proscribed acts of sexual conduct must occur in a public place.

 In Liebman, 652 S.W.2d at 948-49, the court observed:



There is no question that law enforcement agencies have legitimate interests in
deterring and punishing sexual conduct committed in a manner which would offend
the average citizen who might inadvertently confront it; viz: in a public place
where no one has or is able to exclude others, or in a nonpublic place where an
unwitting citizen happens upon the activity due to the actors' reckless disregard for
that possibility. Section 21.07(a), supra. But the need for law enforcement agents
affirmatively to seek out this conduct under circumstances which do not threaten
inadvertent discovery, and thereby knowingly and voluntarily subject themselves
to the alarm and offense the statute seeks to contain, seems minimal if not
nonexistent. [citation omitted].


Viewed in this context, the conduct of the officers is revealed to be nothing more
than a determined and calculated invasion of privacy which has little relationship
to protecting the average law abiding citizen or to advancing the intent of the
criminal prohibition involved.



 Probable cause for a warrantless search and arrest exists when at that moment the
facts and circumstances within the officer's knowledge and of which he had reasonably
trustworthy information are sufficient to warrant a prudent person in believing that the arrested
person has committed or is committing an offense. Britton v. State, 578 S.W.2d 685, 686 (Tex.
Crim. App. 1979).

 The officer had a right to be in the hallway outside the booth, an area which is a
public place. While standing in the hallway, he heard two "not very loud voices" making
moaning sounds. The State contends that in the context of the setting, the officer's auditory
senses furnished him with reason to believe that a crime was being committed. We believe the
noises the officer heard would be as consistent with innocent activity as criminal conduct. It is
just as reasonable to assume the sounds were in response to a pornographic video as it would be
to associate them with criminal activity. We conclude that the information possessed by the
officer fails to rise to the level of probable cause to justify the search and arrest of the appellant. 
We conclude that the trial court erred in denying appellant's motion to suppress.

 The judgment is reversed and the cause remanded.



 

 Tom G. Davis, Justice

[Before Chief Justice Carroll, Justices Kidd and Davis*]

Reversed and Remanded

Filed: February 26, 1992

[Publish]










* Before Tom G. Davis, Judge (retired), Court of Criminal Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (1988).
1.   The court's action in denying the motion to suppress is recited in a stipulation of
evidence entered into by the parties, signed by counsel and the court. The stipulation,
appearing in a supplemental transcript, constituted the evidence at trial following the
motion to suppress.